FILED
2020 Jun-26  PM 02:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **KIMBERLY ELYSE EDMONDSON,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Civil Action No. 2:19-cv-01342-RDP** |
| | } | |
| **ANDREW SAUL, Commissioner of Social Security,** | } | |
| | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF DECISION

Plaintiff Kimberly Elyse Edmondson brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claims for a period of disability and disability insurance benefits ("DIB"). *See also*, 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

## I.      Proceedings Below

On March 18, 2016, Plaintiff filed her application for DIB for alleged disabilities beginning November 3, 2015. (R. 59, 72, 144). The Social Security Administration initially denied Plaintiff's application on July 28, 2016. (R. 59, 74). On September 28, 2016, Plaintiff requested a hearing and on May 24, 2018, Plaintiff's request was granted and a hearing was held before Administrative Law Judge Ronald Reeves ("ALJ"). (R. 30-58, 84). A vocational expert was present and testified during the hearing. (R. 126).  In the ALJ's decision, entered August 28, 2018, he concluded Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. (R. 15–25).

After the Appeals Council denied Plaintiff's request for review of the ALJ's decision on June 18, 2019, that decision became the final decision of the Commissioner and therefore a proper subject of this court's appellate review. (R. 1–3, 139).

## II.    Facts

Plaintiff was 31 years old at the time of the hearing. (R. 59). She has a college education, and previously worked as a mail handler, telephone operator, library page, exercise instructor, and salesclerk. (R. 51, 65, 168).

Plaintiff testified she suffers from the following physical impairments: bursitis, tendonitis, and impingement syndrome in the left shoulder; tendon bursa in the left arm; neck pain and degenerative disc disease; hereditary lymphedema in the right leg; derangement of the left knee; sprained ankle; hip pain; recurrent kneecap dislocation; and constant pain and fibromyalgia. (R. 36, 79). Additionally, Plaintiff testified she suffers from mental impairments including the following: depression; bipolar affective disorder; attention deficit disorder; and general anxiety disorder. (R. 40, 47).

Plaintiff does not use an assistive device to walk, drives herself, and takes care of a dog. (R. 34, 40–41). She alleges that she is in bed at least two weeks every month with "maybe four good days" and claims to have a hard time walking. (R. 40). She stated that she cannot physically walk, cannot lift very much with her left arm, cannot do housework, and is in pain all the time. (R. 35–40, 47). Plaintiff testified that she spends a typical day in bed but gets up to take her dog outside, eat, and attend physical therapy. (R. 43). She says she elevates her leg nine hours a day (during daylight hours) to address her lymphedema. (R. 44–45). Plaintiff further testified she cannot focus, cannot function emotionally, and is constantly stressed. (R. 40, 48).

From July 31, 2013 through April 28, 2016, Plaintiff visited Dr. Loyd Johnson at the Alabama Bone and Joint Clinic for neck, back, and shoulder pain. (R. 453–504). During a visit on July 31, 2013, Plaintiff claimed her neck and lower back pain stemmed from an injury that occurred in 2011. (R. 496). Over the years Plaintiff was treated by Dr. Johnson, as well as Dr. Robert Langsden, at Pain Management Services, and she received cervical blocks and/or cortisone/steroid shots with varying levels of relief ranging from "significant," "some improvement," "partial," to "none at all." (R. 460, 462, 464, 468, 482, 487, 819–873). On three separate visits, Dr. Johnson gave special instructions to Plaintiff to limit her lifting and movement of her left shoulder. (R. 491, 478, 470). She was instructed on August 24, 2015 to lift no more than 30 pounds with her left arm; on October 1, 2015 to lift no more than 10 pounds and no pushing, pulling, or overhead use with the left arm; and finally on November 3, 2015, to lift no more than 25 pounds and avoid overhead use of the left arm. (*Id.*).

On March 3, 2016, Plaintiff underwent arthroscopic surgery on her left shoulder. (R. 458). During a follow-up visit on April 28, 2016, Plaintiff noted that she still had neck pain, but her shoulder pain was improving and that she was going to physical therapy. (R. 456). On August 30, 2016, Dr. Johnson noted that, "[t]he patient says her shoulder pain has improved. She is using it more normally," and that she had, "significant improvement in the symptoms since last visit." (R. 573). Dr. Johnson last examined Plaintiff's shoulder on October, 10, 2016 and noted that she had minimal pain. (R. 802).

From October 10, 2016 through November 28, 2017, Plaintiff continued to see Dr. Johnson for neck and lower back complaints as well as complaints related to her left wrist and left ankle. (R. 782–805). During that time Plaintiff received multiple x-rays and examinations of the complained-about areas. (*Id.*). These examinations and x-rays showed that she had did not have

any muscle weakness, fractures, or subluxation in either ankle, wrist, neck or back. (*Id*.). On July 25, 2016, Plaintiff had an MRI of her cervical spine at UAB ("University of Alabama at Birmingham") which showed "no abnormality[,] no disc protrusion, extrusion, spinal canal stenosis, or significant neural foramina narrowing." (R. 836). Plaintiff continued to see Dr. Langsden at Pain Management Services and received cervical blocks for back pain through February 2018. (R. 819).

Additionally, on February 23, 2018, Plaintiff visited the Varicosity Vein Center complaining of swelling and leg pain. (R. 875). At that time, physician assistant Vicki Burleson noted that "the alignment of the major joints of the left leg are symmetrical. There are no deformities or misalignment of the bones…no edema…." (R. 877).

The first time Plaintiff complained of lymphedema was on July 15, 2010 during a visit with Dr. Unnoppet. (R. 238). Dr. Unnoppet noted that Plaintiff had non-pitting edema in her right foot. (*Id*.). Plaintiff next visited medical providers for lymphedema in June 2016 and July 2017, when on each occasion she presented to the Shelby Baptist Emergency Department complaining of leg swelling and hip and knee pain. (R. 597–599, 742). Plaintiff exhibited edema in both legs during both visits. (*Id*.). She was treated with antibiotic therapy and given instructions about how to care for lymphedema. (R. 759–761). After each visit, she left by herself and was "ambulatory." (R. 621, 774). Her last complaint regarding lymphedema was during a visit to the Varicosity Vein Center on February 23, 2018 (as noted above). (R. 875). The physician assistant found no edema in Plaintiff's left leg and noted, "mild edema in the top of the right foot." (R. 877–878). Additionally, from 2011 to 2018, during visits to physicians for other ailments, the medical records indicate Plaintiff reported sporadic levels of edema in her legs:

5/20/2011: No adenopathy, no clubbing, cyanosis, or edema. (R. 234).

9/13/2012: There is not pitting edema in lower extremities. No calf tenderness. (R. 252).

7/31/2013: Lymphatic: the lymphatic examination bilaterally reveals all areas to be without enlargement or induration. (R. 497).

11/6/2015: No cyanosis or significant edema. (R. 260).

1/21/2016: Problem Description: lymphedema. Onset Date: 7/24/2013. Musculoskeletal: Normal: visual overview of all four extremities is normal. Extremity: Normal: No edema. (R. 383).

7/31/2017: RLE and LLE: Deep pitting indentation remains about a minute. (R. 772).

10/20/2017 and 11/9/2017: Extremities: no clubbing, cyanosis, or edema. (R. 824, 821).

1/29/2018: Extremity: normal: no edema. (R. 889).

2/28/2018: Extremity: normal: no edema. (R. 883).

Plaintiff testified that she also suffers from fibromyalgia and is "in pain all the time." (R. 40, 46). However, on January 1, 2018, Plaintiff visited Dr. Unnoppet at Brookwood Baptist Health for a rheumatology evaluation and this was the only instance found in the medical record where she was tested for fibromyalgia. (R. 888). Dr. Unnoppet stated that Plaintiff "has multiple tender points consistent with fibromyalgia." (*Id.*).

From April 2013 through February 2018, Plaintiff was treated by a psychiatrist, Dr. Shawn Harvey, for her mental condition. (R. 335–357, 895–911). The medical evidence indicates she visited every two to three months, for a total of twenty visits, during that five-year time period. (*Id.*). The medical records show a consistent pattern of depression and general anxiety disorder, with a noted history of bipolar affective disorder and attention deficit disorder. (*Id.*). As of April 30, 2013, Dr. Harvey's notes indicate Plaintiff was prescribed: Klonopin; Wellbutrin; Ambien; and Lamictal and added Vyvanse; Adderall; and Bupropin as of February 20, 2018. (R. 357, 896). On April 30, 2013, Dr. Harvey noted that, "Klonopin causes forgetfulness during the day," and on April 19, 2016 that Plaintiff, "[c]omplains of sedation from meds." (R. 357, 336). During a visit

on February 1, 2017, Dr. Harvey marked that Plaintiff's memory was "[r]ecent[ly] [i]mpaired" and her attention/concentration was "[d]istracted." (*Id.*). On her other visits, Plaintiff's memory and attention/concentration were marked "[i]ntact." (*Id.*). The medical evidence also indicates intermittent "irritability" "focus problems" "low energy" and "fatigue." (*Id.*)

On July 28, 2016, Dr. Samuel D. Williams performed an assessment of Plaintiff's Mental Residual Functional Capacity. (R. 69–71). Dr. Williams found Plaintiff to have memory limitations, but concluded she was able to understand and remember simple instructions. (R. 69). Dr. Williams also found that Plaintiff was moderately limited in three areas: (1) "ability to carry out detailed instructions;" (2) "ability to maintain attention and concentration for extended periods;" and (3) "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." (R. 70). Furthermore, Dr. Williams determined that Plaintiff was, "able to carry out short and simple instructions and attend and concentrate for 2-hour periods on simple tasks with customary breaks and rest during the regular workday. [Plaintiff] may benefit from a flexible schedule. [Plaintiff] may miss 1-2 days a month of work due to psychiatric signs and symptoms." (*Id.*). Dr. Williams concluded that, "all potentially applicable Medical–Vocational Guidelines would direct a finding of "not disabled" given [Plaintiff's] age, education, and RFC. Therefore, [Plaintiff] can adjust to other work." (R. 71).

During the hearing before the ALJ, Plaintiff presented a signed medical source statement from Dr. Harvey, dated April 16, 2018, wherein he checked "No" to this question: "[i]n your opinion, could [Plaintiff] currently sustain work activity on a regular basis…defined as 40 hours a week, 5 days a week." (R. 912). Dr. Harvey also wrote, "Yes" when asked, "[b]ased on [Plaintiff's] current condition, would [Plaintiff] likely miss two or more days of work a month due to the condition?" (R. 913).  The court notes that during the hearing the ALJ questioned discrepancies

6

between Dr. Harvey's signature on his treatment notes and the signature provided on his opinion presented at the hearing. (R. 33). Plaintiff's attorney indicated that she would "get verification and resolve any discrepancy in signatures." (R. 43). The record does not indicate that these discrepancies were ever resolved.

## III.    ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Substantial gainful activity is defined as work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit, whether or not a profit is realized. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of medical impairments that are "severe" and significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 404.1520(c). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ

determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the final part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

After considering the entire record, the ALJ made several findings. (R. 17–25). First, the ALJ found that since November 3, 2015, Plaintiff had not engaged in substantial gainful activity. (R. 18).[1] Second, the ALJ found that Plaintiff had the following combination of severe impairments: left shoulder bursitis, tendonitis, and impingement syndrome; left arm tendon bursa; osteoarthritis, bipolar disorder with dysthymia; attention deficit disorder; and generalized anxiety disorder with panic attacks. (*Id.*). The ALJ also noted that although Plaintiff may have experienced cervical degenerative changes, hypoglycemia, cellulitis, upper respiratory infection, and hereditary lymphedema, "the evidence of record does not show that she ever reported any significant persistent symptoms of these conditions to her doctors." (*Id.*). The ALJ acknowledged that Plaintiff alleged to have fibromyalgia, but deemed the diagnoses received to be consistent with SSR 12-2p in that there was "no indication in the medical evidence that [Plaintiff] has at least 11 positive tender points bilaterally as required by Section II.A of SSR 12-2p." (*Id.*). Furthermore, the ALJ noted that the record evidence fails to exclude other impairments for the cause of the pain and that

---

[1] The ALJ also noted Plaintiff worked after her established disability onset date, but that it did not rise to the level of substantial gainful activity. (R. 18).

8

evidence fails to show that Plaintiff had repeated manifestations of the symptoms as required by Section II.B of SSR 12-2p. (*Id*.).

The ALJ further concluded that Plaintiff's mental impairments, when considered alone and in combination, did not meet or medically equal "paragraph B" criteria of sections 12.04 and 12.06 listings in the Act. (R. 19). To meet paragraph B criteria, Plaintiff's mental impairments would have to result in at least two "marked" or one "extreme" limitation in her functioning. 20 C.F.R. Pt. 404, Subpt. P, App'x. 1, 12.00(F)(2). The ALJ found that Plaintiff only had moderate limitations in three separate areas: (1) "understanding, remembering, or applying information;" (2) "in interacting with others;" and (3) "ability to concentrate, persist, or maintain pace." (R. 20).

Third, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x. 1. (*Id*.). In assessing all of the available evidence, the ALJ provided "good" weight to the objective medical evidence, "lesser" weight to unacceptable medical sources (except where consistent with acceptable medical sources), "little" weight to the medical source statement given by Dr. Shawn Harvey (R. 911–913), and "significant but not conclusory" weight to Dr. Samuel D. Williams' opinions as a reviewing psychiatrist. (R. 23).

Fourth, the ALJ determined that Plaintiff could not perform any of her past relevant work. (R. 23). However, the ALJ did determine that there were sufficient jobs available in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. (R. 24). The ALJ relied on the Vocational Expert's ("VE") opinion testimony in making this determination. (R. 24). The VE testified that given all of the relevant factors, Plaintiff would be able to perform the requirements of representative occupations such as a small products assembler…a sampler…and

a checker. (R. 24–25).[2] Because the ALJ determined that Plaintiff retained the ability to perform these representative occupations, the ALJ found that she was not disabled under Sections 216(i) and 223(d). (R. 25).

## IV.     Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration.  Plaintiff presents three arguments for review: (1) the ALJ erred in giving little weight to Dr. Harvey's (her treating physician) opinion in the medical source statement presented at trial; (2) the ALJ did not properly consider all of her impairments in determining her RFC; and (3) the ALJ did not properly consider her testimony during the hearing. (Doc. #9 at 7). The court considers each of Plaintiff's arguments below.

## V.      Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

---

[2] Dr. Samuel D. Williams listed three additional possible occupations that do not make up an exhaustive list: dial marker, addresser, and surveillance-system monitor. (R. 72).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701. Legal standards are reviewed *de novo*. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## VI.    Discussion

The court addresses Plaintiff's arguments in two parts: (1) whether proper weight was given to Dr. Harvey's (her treating physician) opinion in the medical source statement; and (2) whether there was substantial evidence to support the ALJ's determination. For the reasons explained below, the court finds the ALJ based his decision on substantial evidence and the correct legal standards were applied. Accordingly, the ALJ's decision is due to be affirmed.

### A.    The ALJ did not err in giving little weight to Dr. Harvey's opinion in the medical source statement presented during the hearing.

Plaintiff contends that the ALJ erred in giving little weight to Dr. Harvey's opinion given in the medical source statement and further that the ALJ "failed to consider Dr. Harvey's opinion's consistency with the other evidence of record." (Doc. # 9 at 14). Plaintiff contends that the ALJ failed to apply relevant factors in evaluating Dr. Harvey's opinion and that his treatment notes were actually consistent with his opinion. (Doc. # 9 at 12). The court disagrees.

The court applies three factors in evaluating the weight an ALJ has given to an opinion provided in a medical source statement: (1) the medical source's relationship with the claimant;

11

(2) the evidence the medical source had to support the opinion; and (3) the degree of consistency between the medical source's opinion and the medical evidence in the record as a whole. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c)(2). The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003).[3] The ALJ may disregard a treating physician's opinion in a social security disability proceeding with good cause if he clearly articulates the reasons for doing so. 20 C.F.R. §§ 404.1527(d)(1)–(2), 416.927(d)(1)–(2). Good cause exists to give less than substantial or considerable weight to a treating physician's medical opinion, in a social security disability case, when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id*. The ALJ must state with particularity the weight given to each medical opinion and must clearly articulate his reasoning. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011). Good cause has been found when the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (quoting *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987); *Sharfaz v. Bowen*, 825 F.2d 278, 280–81 (11th Cir. 1987)).

The Eleventh Circuit has also found good cause when the doctors' opinions were conclusory or inconsistent with their own medical records. *Lewis*, 125 F.3d at 1440 (quoting *Jones v. Department of Health & Human Servs.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991), and *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991)). "A statement by a medical source that [someone] [is] 'disabled' or 'unable to work' does not mean that [the court] will determine that [they] are

---

[3] The court notes Plaintiff filed her claim for DIB <u>before</u> March 27, 2017, so the new standard imposed by 20 C.F.R. § 404.1520(c)(a) does not apply here.

disabled." 20 C.F.R. § 1527(d)(1). Indeed, "administrative findings that may determine whether an individual is disabled, are reserved to the Commissioner." *Id.* Such opinions on these issues must not be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance. SSR 96–5p; *see also Bell v. Bowen*, 796 F.2d 1350, 1353–54 (11th Cir. 1986). The Commissioner will consider all statements made by treating physicians, but "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

Here, the ALJ demonstrated "good cause" for giving "little weight" to Dr. Harvey's opinion. (R. 23). To be sure, Dr. Harvey presented no supplemental evidence, his opinions are conclusory, and his opinion is not wholly consistent with the medical record evidence in the case or his own medical records. Dr. Harvey opined that Plaintiff could not "currently sustain work activity on a regular and continuing basis" (defined as 40 hours a week, 5 days a week), and that Plaintiff would "likely miss two or more days of work a month." (R. 912–913). Dr. Harvey's only explanation for his conclusion was "see notes." (R. 912–913). The only "notes" available are the twenty treatment forms completed in connection with Plaintiff's visits to Dr. Harvey's office. (R. 335–357, 895–911). On each of Plaintiff's visits, Dr. Harvey would fill out the same form. (*Id.*). Over the course of five years, and in twenty separate treatment sessions, only once is there any documented indication that Plaintiff was not within normal limits regarding her memory and/or her attention/concentration. (R. 905–906). On February 1, 2017, Dr. Harvey marked Plaintiff's memory as "[r]ecent[ly] [i]mpaired" and her attention/concentration as "[d]istracted." (*Id.*). No restrictions of any kind are noted in Dr. Harvey's copious treatment notes. This is wholly inconsistent with his opinion that Plaintiff could not sustain work activity on a regular and continuing basis. Further, his opinion is also inconsistent with his own medical records and is not

13

bolstered by any other evidence in the record. In addition, as the ALJ discussed, Plaintiff's function report reflects that "she is able to take care of herself and personal needs, take care of her dog, handle a checking account, and drive if necessary. (R. 182–189). The court has no hesitation in concluding that (1) substantial evidence supports the ALJ's decision to give "little weight" to the medical source statement of Dr. Harvey, (2) his opinion is conclusory, and (3) in any event, his opinion goes to the ultimate issue as to whether Plaintiff is able to work, a question emphatically reserved for the Commissioner. 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

The ALJ also properly discussed Plaintiff's limitations related to her diagnoses of general anxiety disorder, depression, attention deficit disorder, and bipolar affective disorder. (R. 19–20). The ALJ explained the reasons for his decision. He weighed the severity of Plaintiff's mental impairments and determined they did not meet or medically equal the paragraph B or C criteria of sections 12.04 and 12.06 of the Act. (R. 19) (*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(F)(2) (providing that to meet or medically equal mental impairments in paragraph B, a plaintiff must have two "marked" limitations or one "extreme" limitation.)) The ALJ determined that Plaintiff has only moderate limitations in three areas: (1) understanding, remembering, or applying information; (2) interacting with others; and (3) the ability to concentrate, persist, or maintain pace. (*Id.*).

Similarly, the ALJ properly considered the findings of Dr. Samuel D. Williams, a state-appointed psychiatrist. (R. 60–73). The ALJ gave "significant but not conclusory weight" to those findings. (R. 23). Dr. Williams stated that Plaintiff "*may* miss 1–2 days a month of work due to psychiatric signs and symptoms" and "*may* benefit from a flexible schedule." (R. 70) (emphasis added). However, Dr. Williams' conclusion overall was that "all potentially applicable Medical–Vocational Guidelines would direct a finding of 'not disabled' given [Plaintiff's] age,

14

education, and RFC. Therefore [Plaintiff] can adjust to other work." (R. 71) Considering the contradictory conclusions reached by Dr. Harvey and Dr. Williams, and after careful review of Dr. Harvey's own medical records, this court concludes that there is substantial evidence to support the ALJ's finding that there is good cause to give little weight to Dr. Harvey's opinion.

### B.    Substantial Evidence Supports the ALJ's RFC Findings.

Plaintiff next argues that the ALJ did not properly consider all of her impairments and the hearing testimony in creating his RFC assessment, and, therefore, his overall decision regarding her disabilities was improper. (Doc. #9 at 7). The court, however, finds that substantial evidence exists to support the ALJ's RFC, and that the ALJ properly considered all the available evidence in making his decision.

A claimant's RFC is an administrative finding as to what a claimant can do in a work setting given the limitations caused by her impairments. *See* 20 C.F.R. §§ 404.1527(d), 404.1545(a), 416.927(d), 416.945(a). A claimant's RFC is a determination reserved for the ALJ and is based on the relevant medical evidence and other evidence included in the case record. *See* 20 C.F.R. §§ 404.1545 (a)(3), 416.945 (a)(3). Statements made by a physician are relevant to the ALJ's findings, but they are not determinative. After all, it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.*, 20 C.F.R. § 404.1546(c). A claimant's statements about the frequency, intensity, and duration of her symptoms will only impact her RFC to the extent they are consistent with other evidence in the record. *See* 20 C.F.R. §§ 404.1529, 416.929. As a general rule, a claimant's statements about pain or other symptoms alone will not establish disability. *See* 20 C.F.R. §§ 404.1529(a), 416 .929(a) (2012). Furthermore, credibility determinations related to the determination of a claimant's RFC are the province of the ALJ. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) quoting (*Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir.1984)).

"There is no rigid requirement for the ALJ to refer to every piece of evidence in his decision."

*Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

    **I.**    **Substantial evidence supports the ALJ's finding that Plaintiff's left shoulder, neck, and leg impairments, alone or in combination, were not disabling under the Act.**

The ALJ assessed Plaintiff's RFC "[a]fter careful consideration of the entire record." (R. 21). In doing so the ALJ determined that Plaintiff had:

> [T]he residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except she would not climb ladders, ropes, or scaffolds. She would not crawl and would not perform around hazards. She could frequently climb ramps or stairs, balance, stoop, kneel, or crouch. She can understand or remember simple instructions, carry out short and simple instruction[s], and attend and concentrate for two-hour periods on simple tasks with customary breaks during the regular workday. Her interaction and contact with the public, co-workers, and supervisors should be no more than occasional and brief (meaning no more than thirty minutes at one time). Any change in the work setting or work expectations should be gradually introduced. She would need assistance in setting realistic goals and making long-term plans. She can lift up to 25 lbs. with the right dominate upper extremity, and up to 10 lbs. with the left upper extremity. She would need the opportunity to change postures from an upright standing or walking posture to a seated posture or vice versa. This would not be on a mechanically or timed basis but may occur as frequently as every thirty minutes. She would need the use of compression stockings and a left wrist brace.

(*Id.*). In making his determination regarding the restrictions Plaintiff had related to her left arm/shoulder, the ALJ relied on medical records. Those records indicated that in August 2015 Dr. Johnson restricted her to "lifting not more than 10 pounds, with no twisting, no bending, and no left arm overreaching." (R. 21). However, in November 2015, Dr. Johnson changed that restriction to "[n]o [lifting] more than 25 lbs. with left arm...avoid overhead with left arm." (R. 470). Furthermore, the following March, Plaintiff had arthroscopic surgery and stated she was, "pleased with progress," and that her "shoulder pain is improving." (R. 421, 456). The ALJ acknowledged, as is reflected in his RFC assessment, that Plaintiff cannot lift more than 10 pounds using her left shoulder. (R. 21). However, based upon the VE's testimony, the ALJ found that there are jobs

available in the national economy that Plaintiff can perform even in light of her limitations. (R. 51). Therefore, substantial evidence supports the ALJ's decision that Plaintiff's left shoulder impairments do not, alone or in combination with other impairments, render her disabled.

Substantial evidence also supports the ALJ's determination that Plaintiff does not have any significant ongoing limitations related to cervical degeneration damages, hypoglycemia, cellulitis, or upper respiratory infection. (R. 18). Plaintiff visited Dr. Langsden and received cervical blocks related to her neck pain. (R. 819). Other than these treatments, however, neither the medical evidence nor her own testimony indicate she experienced ongoing issues related to cervical degeneration. Plaintiff also failed to establish limitations related to her hypoglycemia, cellulitis, or upper respiratory infections. Similarly, the medical record does not indicate those conditions presented ongoing problems. Therefore, substantial evidence supports the ALJ's decision to not categorize these impairments as severe "medically determinable impairments." (R. 18).

Regarding Plaintiff's diagnosis of hereditary lymphedema and her purported issues with walking, Plaintiff testified that, "I am limping[,] I can't walk very far without having to limp, because of the lymphedema," and that she has "a derangement of [her] left knee, sprained ankle…[s]ometimes I have to wear my ankle braces…because my feet are deformed." (R. 36–40). But, these statements are simply not consistent with other evidence in the record. As recently as February 2018, the Varicosity Vein Center found that "the alignment of the major joints of the left leg are symmetrical. There are no deformities or misalignment of the bones…no edema…." (R 877). During both of her visits to the Shelby Baptist Emergency Department related to her lymphedema, Plaintiff was released with instructions designed to help manage her lymphedema and she left both visits unassisted and "ambulatory." (R. 621, 759, 761, 774). The Varicosity Vein Center also found that she had "mild edema in the top of the right foot." (R. 877–878).

Furthermore, as noted by the ALJ, Plaintiff drove herself to the hearing and while she was there she was walking without the use of an assistive device. (R. 40). The court finds that substantial evidence supports the ALJ's finding that Plaintiff's lymphedema was not disabling, either alone or in combination with other impairments.

## II.      Substantial evidence supports the ALJ's finding that Plaintiff's diagnosis of fibromyalgia does not meet the statutory requirements.

In order for a diagnosis of fibromyalgia to be considered a medically determinable impairment, a claimant must show that they have: (1) a history of widespread pain; (2) at least 11 positive tender points on physical examination; and (3) evidence that other disorders that could cause the symptoms or signs were excluded. (SSR 12-2p).

Here, the ALJ applied the proper legal standard in analyzing Plaintiff's allegations regarding fibromyalgia. (R. 18). Even though Plaintiff was assessed with multiple tender points consistent with fibromyalgia, the fact that her physician did not exclude evidence that other disorders could cause the symptoms or signs was sufficient to warrant the ALJ's finding. (R. 18–19). *See* (SSR 12–2p § II.A(3). Indeed, the medical record demonstrates that Plaintiff has a myriad of other ailments that could lead to her pain. The ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404. 1529 and SSR 16-3p." (R. 21). The ALJ did not commit error in his analysis.

## VII.    Conclusion

After careful review, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this June 26, 2020.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE